BEFORE THE THIRD DIVISION, FEBRUARY 18, 1954

**No. 57872.**—Haghani Trading Co. and/or Equitable Commercial Co. *v.* United States, petition 6941–R (New York).

EKWALL, Judge: This is a petition for remission of additional duty filed under authority of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489). Said additional duty was assessed by reason of the fact that the final appraised value exceeded the value declared on entry. The merchandise involved consisted of 38 cases of glassware imported from Iran. It is apparent from the record that the entry contained no notation as to the charges for cases and packing.

Mr. Moosa Haghani, who described himself as the owner of the petitioner, appeared on his own behalf without benefit of counsel. Summarized, his testimony was substantially to the following effect. This particular type of merchandise is known to him as semiantique, being from 90 to 100 years old, which

had originally belonged to what he described as "the aristocracy, the dynasty there [in Iran]." When the dynasty was overthrown, portions were distributed in various cities and villages and among the people in Iran and were bought from shops or homes and assembled and shipped to this country and sold sometimes for purposes of utility but mostly for decorative purposes. The first shipment the petitioner had was imported in 1942 and, with the exception of one other shipment of 15 cases, he did not have another shipment for several years, due to the fact that in the meantime he was trying to familiarize himself with selling the merchandise in this country and obtaining customers for it. The instant importation was his third shipment and was sent on consignment. The consular invoice, which was presented to the United States appraiser through petitioner's customs broker, showed the price as f. o. b. a Persian port, which petitioner understood to include all expenses and packing charges. Upon being informed that the Government requested information as to packing charges on this shipment, petitioner based his reply to such request upon figures from previous shipments, but made an error in adding up certain figures. In corroboration of this last statement, petitioner introduced in evidence certain documents, which were received in evidence as collective exhibit 1. As we understand petitioner's statement, he made an error in taking the figures of packing charges and boxes and excelsior to arrive at an average price to be submitted to the Government officials and used a figure for inland freight porterage which was about twice as great as the actual packing charges. Because of the difference in the amount of packing charges of this shipment and that of the earlier shipments, a special agent was sent to the petitioner's place of business to investigate.

The Government contends that the documents received in evidence do not sustain petitioner's testimony as to value; that there were private invoices involved which show that the cost of the merchandise is considerably higher than that given on the consular invoice. Petitioner claims that the documents referred to were not, in fact, invoices but were only guide lists that were given to him to aid him in selling the merchandise and had nothing to do with the purchase price.

The Government introduced the testimony of the customs agent who interviewed the petitioner. This witness stated that the examiner noticed that the statement on the invoice as to charges for cases and packing had been omitted from the entry, and the matter was referred to the special agent's office for investigation. He thereupon visited petitioner and asked him to explain the charges which he had given to the appraiser. Petitioner informed the witness that the charges for cases and packing were based on two previous imports. Petitioner, upon request, readily made available his files. Said files contained documents which the witness took to be private invoices which showed much higher values for the merchandise. The investigation was then expanded to include the two previous imports, and the witness concluded, as a result of such investigation, that petitioner's report to the appraiser as to the charges for packing and cases was based upon the so-called private invoices. Furthermore, the files contained a copy of a telegram which indicated a sum considerably in excess of the invoice and entered value had been expended by the shipper to acquire the merchandise. It was upon this evidence that the Government based its finding of undervaluation. The witness explained that there actually were three shipments involved in the investigation and, by a chronology of telegrams and study of the case, it was apparent to the customs agent that the telegram above referred to did relate to a shipment of 38 cases that petitioner wanted to arrive in August but which did not arrive until the following November, and, in the meantime, petitioner had cabled to his relative in Teheran not to send any letters or correspondence, but to hold everything; that he would be in Teheran and would advise him. The telegrams referred to were received in evidence as collective exhibit A.

Due to the fact that the petitioner appeared without counsel, the record is confused, and various extraneous matters were discussed which have no bearing on the case at bar. The witness testified that he gave the appraiser whatever papers he thought were useful in deciding on the value and that he concealed nothing from the customs agent, but placed all his files at the disposal of said customs agent.

Government counsel contends that the petitioner was in possession of papers at the time of entry that were sufficient to put a prudent person on notice to check carefully the entered value. Presumably, this refers to certain documents which are now in evidence and which petitioner explained in the course of his testimony. For instance, in regard to a copy of a telegram, dated February 14, 1947, which indicated a sum in excess of the invoice and entered values expended by the shipper in Teheran to acquire the merchandise (collective exhibit A), the testimony of the Government agent showed that it was primarily on this evidence that the undervaluation was based. This telegram stated that petitioner's father had expended 40,000 tomans for approximately 50 cases of glassware, which amount, converted into rials, was said to represent 400,000 rials. As pointed out by petitioner, the instant shipment consisted of only 38 cases instead of 50. Moreover, the shipment consisted of antique or semiantique glassware, and it is a matter of common knowledge that there is a vast difference of opinion as to the value of antiques. As to the documents which are described by the petitioner as guide lists and by the Government as private invoices, they are not in the English language, and the court is unable to determine their nature. Moreover, it is petitioner's contention and his sworn testimony that they do not relate to the importation before us but cover two earlier importations.

In connection with the telegram, dated July 23, 1947 (collective exhibit B), in which petitioner advised his brother-in-law not to send letters, nor to prepare consular invoices, it is clear to the court that this was satisfactorily explained by the testimony of petitioner that his object in sending this telegram was to avoid a long delay in the mails, as he was flying to Iran and would reach there long before any mail could arrive in the United States.

As above stated, the record is confusing, but it is the court's understanding that the question of undervaluation as to this shipment related only to the items of cases and packing and not to the value of the merchandise *per se*.

It is well established that, in petitions arising under section 489, *supra*, each case presents a set of facts peculiar to itself, and that the disposition of an individual petition rests with the facts and circumstances surrounding the entry under consideration. *Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320.

A careful consideration of the record is convincing that the petitioner, in making entry as he did, acted in good faith and was without intention to defraud the Government or to conceal or misrepresent the facts pertaining to this entry. The petition is therefore granted.

Judgment will be rendered accordingly.